672 S.E.2d 204

Antionette FALLS, Plaintiff
Below, Appellant,

v.

UNION DRILLING INC., a Delaware cor-
poration, Kevin Wright, Donald Roach,
Linda Hall, and W. Va. Insurance Com-
pany, Defendants Below, Appellees.

No. 33907.

Supreme Court of Appeals of
West Virginia.

Submitted: Oct. 8, 2008.

Decided: Dec. 10, 2008.

Dissenting Opinion of Justice
Starcher Dec. 30, 2008.

David J. Romano, Esq., Sarah E. Wagner, Rachel E. Ramano, Romano Law Office, Clarksburg, for Appellant.

Stuart A. McMillan, Esq., Bowles Rice McDavid Graff & Love, PLLC, Charleston, for Appellees Union Drilling, Inc. and Kevin Wright.

Charles R. Bailey, Esq., Ryan Flanigan, Esq., Bailey & Wyant, PLLC, Charleston, for Appellee, Donald Roach.

David A. Sims, Esq., Gregory R. Tingler, Esq., Law Offices of David A. Sims, PLLC, Elkins, for Appellee, W. Va. Insurance Company.

PER CURIAM :[1].

In the instant matter, Appellant Antionette Falls, individually and in her capacity as administratrix of the estate of Daniel E. Falls,[2] seeks reversal of and/or the prohibition of the Circuit Court of Harrison County's June 21, 2007, order dismissing her common-law negligence claims against Union Drilling, Inc., and its employees, Donald Roach and Kevin Wright (collectively the "Defendants") for failure to state a claim upon which relief can be granted on the grounds that defendants were entitled to immunity under West Virginia Workers' Compensation Act, W. Va.Code § 23–1–1. After careful consideration of the briefs and arguments in this proceeding, as well as the pertinent legal authorities, we affirm the circuit court's order.

## I.

### FACTUAL AND PROCEDURAL HISTORY

Daniel Falls was fatally injured in a single vehicle accident that occurred while he and his supervisor [3], Donald Roach, were traveling home to Spelter, Harrison County, West Virginia, from a Union Drilling worksite located in Marshall County, West Virginia. On the previous work day, Donald Roach had worked at least one extra shift in addition to the five, regularly-scheduled eight-hour shifts he was scheduled to work that week.[4] Roach drove home to Harrison County after his shifts ended, giving Daniel Falls a ride. During that drive, Roach lost control of the vehicle [5] and Daniel Falls was fatally injured.

1. Pursuant to an administrative order entered on September 11, 2008, the Honorable Thomas E. McHugh, Senior Status Justice, was assigned to sit as a member of the Supreme Court of Appeals of West Virginia commencing September 12, 2008, and continuing until the Chief Justice determines that assistance is no longer necessary, in light of the illness of Justice Joseph P. Albright.

2. Appellant is the natural mother of Daniel Falls and was appointed administratrix of his estate by the Clerk of the Harrison County Commission.

3. Falls and Roach were both employees of Appellee Union Drilling. The Complaint alleges that Roach was a supervisor of Falls and was responsible for directing the activities of Falls and other employees, which included the number of hours and work performed by these employees.

4. The parties dispute the number of extra shifts Donald Roach worked. Appellant alleges that Mr. Roach had been awake 31 of 32 hours, including working three shifts, two of them consecutively. Appellees allege this is unsubstantiated and misleading, and that Mr. Roach worked a "double shift", adding only one extra shift to his regular schedule.

5. The accident occurred several miles from the job site on U.S. Route 250, in Cameron, West Virginia. At the time of the accident, Mr. Roach

Appellant filed the instant wrongful death action in the Circuit Court of Harrison County against Union Drilling, Donald Roach, Kevin Wright[6], Linda Hall, and W. Va. Insurance Company, Hall's insurer, alleging that Roach had fallen asleep at the wheel due to being overworked by his employer.[7] Appellant's Complaint alleges that Union Drilling "negligently and recklessly" required Falls, Roach, and other employees to "consistently work excessive hours without adequate rest or sleep." Therefore, Appellant contends that Falls' injuries were the direct and proximate result of the alleged workplace negligence of Union Drilling. The Complaint pled that the actions and omissions of Roach and Wright were "within the scope of their employment and/or agency relationship with Union Drilling", thus permitting consideration of the doctrine of *respondeat superior* or vicarious liability against Union Drilling.

Appellees filed motions to dismiss the action asserting that because Appellant's theory of liability rested solely on the work-related activities of Union Drilling, the tort law claims against them were barred by statutory immunity provided by West Virginia Code § 23-2-6. The circuit court granted said motions, dismissing Appellant's claims, finding that the Appellees were entitled to sweeping immunity from common tort claims for negligently inflicted injuries brought by employees, citing *Bias v. Eastern Associated Coal Corp.*, 220 W.Va. 190, 640 S.E.2d 540 (2006). The court held that no statute expressly provides Appellant with a private remedy outside of the workers' compensation system. Accordingly, the court concluded that Appellant failed to state a claim upon which relief can be granted.

Thereafter, Appellant filed a Motion for Reconsideration and a Motion to Amend her original Complaint to include a deliberate intent cause of action. By order dated August 13, 2007, the circuit court denied Appellant's Motion for Reconsideration, but granted the Motion to Amend, permitting the Appellant to allege a deliberate intent case. Appellant then filed a motion to certify a question of law to this Court on August 16, 2007. The circuit court denied said motion finding that this Court's decision in *Bias v. Eastern Associated Coal Corp.*, 220 W.Va. 190, 640 S.E.2d 540, was controlling substantively, and because procedurally, the circuit court's dismissal order was final and appealable. Appellant filed her Petition for Appeal or Alternatively Writ of Prohibition on October 23, 2007.[8]

## II.

### STANDARD OF REVIEW

The question presented on appeal is purely a question of law. The central issue we are called upon to decide here is

---

was driving the vehicle of his girlfriend, Linda Hall.

**6.** The Complaint alleges that Kevin Wright was employed as a Union Drilling supervisor and was the immediate supervisor of Donald Roach.

**7.** The record before us reflects that in addition to filing the instant action, Appellant also pursued and recovered policy limits from Donald Roach's automobile insurer on a negligent driving claim. In exchange for policy limits, Appellant entered into a covenant not to execute on any judgment received against Roach. The record also reflects that, to date, Appellant has not filed a Workers' Compensation claim.

**8.** This Court originally granted review of the instant case as accepting Appellant's petition for appeal, instead of as a writ of prohibition. However, we will note that as a general rule "[a]n order of a trial court dismissing a complaint under the provisions of Rule 12(b)(6), with leave to amend, is in the nature of an nonappealable interlocutory order." *Highmark West Virginia, Inc. v. Jamie, M.D.*, 221 W.Va. 487, 655 S.E.2d 509 (2007)(*quoting* F.D. Cleckley, R.J. Davis, L.J. Palmer, *Litigation Handbook on West Virginia Rules of Civil Procedure* § 12(b)(6) (Juris.Pub.2006)). Although this interlocutory matter is not, as a matter of procedure, technically proper before us as an appeal, because Appellees have not raised this issue, and have addressed the issues presented herein on their merits, we will, in our discretion, address this matter as an appeal that is properly before us. In other contexts, we have, in our discretion, proceeded to address matters not technically appropriate for review when the parties involved do not object. *See* Syl. Pt. 3, *State v. Salmons*, 203 W.Va. 561, 509 S.E.2d 842 (1998)(when a defendant assigns an error in a criminal case for the first time on direct appeal, the state does not object to the assignment of error and actually briefs the matter, and the record is adequately developed on the issue, the Court may, in its discretion, review the merits of the assignment of error).

whether the immunity provisions of West Virginia Code § 23–2–6 immunize employers and co-employees from common law liability for death or injury that occurs where an employee is killed on a public highway while riding in a vehicle driven by another employee who falls asleep at the wheel after both employees have left the employer's premises after working a double shift. "Where the issue on an appeal from the circuit court is clearly a question of law or involving an interpretation of a statute, we apply a *de novo* standard of review." Syl. Pt. 1, *Chrystal R.M. v. Charlie A.L.,* 194 W.Va. 138, 459 S.E.2d 415 (1995). Furthermore, "[a]ppellate review of a circuit court's order granting a motion to dismiss a complaint is *de novo.*" Syl. Pt. 2, *State ex rel. McGraw v. Scott Runyan Pontiac–Buick, Inc.,* 194 W.Va. 770, 461 S.E.2d 516 (1995). With this standard of review in mind, we proceed to consider the issues before us.

### III.

### DISCUSSION

Appellant asserts three assignments of error. First, Appellant contends that the circuit court's conclusion that Appellees are shielded from common-law liability by the immunity provisions of the West Virginia Workers' Compensation Act is incompatible with long-standing precedent of this Court. Second, Appellant asserts that the circuit court's ruling creates an unnecessary constitutional confrontation between her right to a certain remedy and jury trial and the immunity provisions of the West Virginia Workers' Compensation Act. Third, Appellant alleges that the circuit court's conclusion violates the public policy of this State. We will address each of these arguments in turn.

Under West Virginia's Workers' Compensation system, employers are entitled to immunity from suit for work-related injuries brought by employees. West Virginia Code § 23–2–6 provides that:

[a]ny employer subject to this chapter who subscribes and pays into the workers compensation fund the premiums provided by this chapter or who elects to make direct payments of compensation as provided in

this section is not liable to respond in damages at common law or by statute for the injury or death of any employee, ***however occurring,*** after so subscribing or electing, and during any period in which the employer is not in default in the payment of the premiums or direct payments and has complied fully with all other provisions of this chapter.

W. Va.Code § 23–2–6 (2003) (Emphasis added). This Court has previously defined the term "however occurring", as used in this section, to mean "an employee who is injured in the course of and as a result of his employment, and one who, under the common-law principles of master and servant, could have maintained an action against his employer." *Cox v. United States Coal & Coke Co.,* 80 W.Va. 295, 92 S.E. 559, 561 (1917).

The immunity provided by West Virginia Code § 23–2–6 is sweeping. We held in *Bias v. Eastern Associated Coal Corp.,* 220 W.Va. 190, 640 S.E.2d 540, that:

[T]he Legislature intended for W. Va.Code 23–2–6 (1991) to provide qualifying employers sweeping immunity from common-law tort liability for negligently inflicted injuries. As this Court succinctly stated in *State ex rel. Frazier v. Hrko,* 203 W.Va. 652, 659, 510 S.E.2d 486, 493 (1998), "[w]hen an employer subscribes to and pays premiums into the Fund, and complies with all other requirements of the Act, the employer is entitled to immunity for any injury occurring to an employee and 'shall not be liable to respond in damages at common law or by statute.' W. Va.Code § 23–2–6 [1991]." This immunity is not easily forfeited.

*Id.* at 194, 640 S.E.2d at 544.

We also provided in Syllabus Point 2 of *Bias,* that "[a]n employer who is otherwise entitled to the immunity provided by W. Va.Code § 23–2–6 (1991) may lose that immunity in only one of three ways: (1) by defaulting in payments required by the Workers' Compensation Act or otherwise failing to be in compliance with the Act; (2) by acting with deliberate intention to cause an employee's injury as set forth in § 23–4–2(d); or (3) in such other circumstances where the Legislature has by statute ex-

pressly provided an employee a private remedy outside the workers' compensation system."

Co-employees are also provided immunity pursuant to West Virginia Code § 23-2-6a which states:

[t]he immunity from liability set out in the preceding section shall extend to every officer, manager, agent, representative or employee of such employer when he is acting in furtherance of the employer's business and does not inflict an injury with deliberate intention.

W. Va.Code § 23-2-6a (1949).

Under our traditional "going and coming rule", workers compensation coverage is not extended to an employee who is injured while going to and coming from work, because absent special circumstances, that employee is not considered to be "in the course of" his or her employment at the time. *Brown v. City of Wheeling*, 212 W.Va. 121, 125, 569 S.E.2d 197, 201 (2002)(*citing De Constantin v. Public Service Comm'n*, 75 W.Va. 32, 83 S.E. 88 (1914)). "In other words, the employee may not recover workers' compensation benefits, and the employer is not immune from a negligence action." *Brown*, 212 W.Va. at 125, 569 S.E.2d at 201. An employee is entitled to compensation for an injury sustained in going to or coming from his work, only where such injury occurs within the zone of his employment, and that zone must be determined by the circumstances of the particular case presented. Syl. Pt. 1, *Carper v. Workmen's Compensation Comm'r*, 121 W.Va. 1, 1 S.E.2d 165 (1939). "No definite rule can be laid down as to what is the zone of employment, and each case must be decided on its own facts and circumstances." *Id.* at 3, 1 S.E.2d at 166. Thus, this Court has recognized that special circumstances within a given claim are directly relevant to whether a given injury is compensable.

Appellant argues that she should be entitled to pursue a common law wrongful death claim against the Appellees because the decedent was killed after leaving Union's work premises after his shift ended, his death did not result from or occur in the course of employment. Appellant alleges that al-

though this Court observed in *Bias*, 220 W.Va. 190, 640 S.E.2d 540, that the Legislature intended for employer immunity to be sweeping, immunity is not unlimited. Rather, the employer must first fit into the four corners of the Workers Compensation Act in order for immunity to apply.

Appellant alleges that her reliance on a *respondeat superior* theory of liability for some of Donald Roach's conduct does not trigger the Appellees' immunity under the act, nor does it affect her right to proceed with a wrongful death action against the Appellees because her contention that her son's death did not "result from" and occur "in the course of" employment is not undermined by her allegation that Defendant Roach's negligent conduct was directly related to the scope of his employment. Appellant contends that the question of whether decedent's death resulted from and occurred in the course of his employment for the purpose of Workers' Compensation benefits is immaterial to a determination of whether defendants were, at any time during the chain of events, acting within the scope of their employment at the time of the crash. Appellant alleges that the circuit court applied the *Bias* decision too broadly, failing to realize that immunity does not apply unless the conduct at issue comes within the four corners of the act first. Appellant asserts that here, she specifically pled that neither the decedent nor Donald Roach were "on the job" at the time the accident occurred. Thus, although she contends that the decedent would not have been killed but for Mr. Roach's employment, immunity should not apply.

Appellant cites to various prior cases in an attempt to support her conclusion that a common law negligence cause of action is appropriate. First, Appellant cites to *Brown v. City of Wheeling*, 212 W.Va. 121, 125, 569 S.E.2d 197, 201. *Brown* involved a co-employee who injured the plaintiff in a vehicular accident while coming back from an out of town work-related training session. Therein, we held that the employer was entitled to immunity because the co-employees were acting within the scope and course of their

employment while coming back from the training session.

Appellant next points to an older decision of this Court, *Cox v. United States Coal & Coke Co.,* 80 W.Va. 295, 92 S.E. 559, 561. *Cox* involved a plaintiff who voluntarily went to his employer's premises to explain to his supervisor why he missed his shift that morning. On his way home, while still on the premises, but not while acting within the scope of his employment, the plaintiff was struck on the head by an object thrown by a co-employee who was working in a nearby railroad car. This Court rejected the employer's claim of immunity and stated, in part that, "it surely was not the purpose of the legislature to relieve an employer from liability for a negligent act causing injury to one of his employees who happens not at that particular moment to be engaged in performing labor for him." . . . "The only essential condition entitling the injured employee to be compensated out of the fund being that the injury must occur in the course of and as a result of his employment."

Appellant alleges that not only is the circuit court's decision at odds with *Brown* and *Cox,* it is also inconsistent with this Court's recognition that an employer may be liable for injuries occurring off the job caused by an over-fatigued worker if the employer could have reasonably foreseen that the employee would pose a risk of harm to others. *Robertson v. LeMaster,* 171 W.Va. 607, 612, 301 S.E.2d 563, 568–69 (1983).

Conversely, Appellees allege that the location and timing of the accident is not the decisive factor in determining whether to strip them of immunity because the test for immunity, under *Bias,* 220 W.Va. 190, 640 S.E.2d 540, is whether the alleged negligent actions are work-related, *"however occurring."* [9] Thus, they contend that the fact that the injury occurred beyond the narrow time and space limits of the workplace is immaterial to the immunity analysis. Even though the accident itself occurred just after the decedent and Roach left the work-site, the Appellant here is alleging that the negligence itself actually occurred during the work day at the work site. Appellees point out that Appellant somewhat contradicts herself in an attempt to create a *respondeat superior* claim against Union asserting that Roach was acting within the scope of his employment, but that the accident did not occur during the course of employment. Appellees allege that classifying one type of conduct in two different ways produces a nonsensical result. Furthermore, Appellees allege that the *Bias* decision makes it abundantly clear that W. Va.Code § 23–2–6 entitles employers to broad-sweeping immunity from common law tort claims based on work-related conduct brought by employees. Appellees contend that because Appellant did not argue below that the circuit court misapplied any of the three specific exceptions to immunity enunciated in *Bias,* 220 W.Va. 190, 640 S.E.2d 540, the circuit court correctly found that the Appellees were entitled to immunity.[10]

Upon reviewing the merits of the parties' arguments, we must first state that while we believe that our decision in *Bias* does apply to this case, we would not apply its holding as broadly in this case as Appellees suggest. In *Bias,* we had specific occasion to interpret W. Va.Code § 23–2–6 to determine whether a plaintiff was entitled to assert a common law claim for a "mental-mental" injury which was statutorily prohibited from being compensable under the Workers' Compensation statutory scheme, where the plaintiff had claimed an injury occurring on the job, within the zone of employment, as the result of a coal mine fire. Therein, we found that the claimant was not entitled to a common law

**9.** Appellees specifically point to the following language in West Virginia Code § 23–2–6:

"[a]ny employer subject to this chapter who subscribes and pays into the workers compensation fund the premiums provided by this chapter or who elects to make direct payments of compensation as provided in this section **is not liable to respond in damages at common law or by statute for the injury or death of any employee,** *however occurring,* after so sub-scribing or electing, and during any period in which the employer is not in default in the payment of the premiums or direct payments and has complied fully with all other provisions of this chapter."
W. Va.Code § 23–2–6 (emphasis added).

**10.** The exceptions we enunciated in *Bias* are set forth more fully above.

claim because he had been injured on the job.

In Syllabus Point 2 of *Bias*, we held "[a]n employer *who is otherwise entitled to the immunity provided by W. Va.Code § 23–2–6 (1991)* may lose that immunity in only one of three ways: (1) by defaulting in payments required by the Workers' Compensation Act or otherwise failing to be in compliance with the Act; (2) by acting with deliberate intention to cause an employee's injury as set forth in § 23–4–2(d); or (3) in such other circumstances where the Legislature has by statute expressly provided an employee a private remedy outside the workers' compensation system." (Emphasis added). The immunity conferred upon an employer is tied to the allegation of a work-related injury, i.e., an accidental personal injury arising out of and in the course of employment. *Wetzel v. Employers' Service Corp. of West Virginia*, 221 W.Va. 610, 656 S.E.2d 55 (2007).[11] The issue we confront herein is whether immunity extends to the specific claims set forth in Appellant's complaint. In doing so, we are mindful that when an employee is injured while going to and coming from work, *absent special circumstances*, that employee is not considered to be "in the course of" his or her employment at the time. *Brown v. City of Wheeling*, 212 W.Va. at 125, 569 S.E.2d at 201 (Emphasis added). We conclude that the injuries sustained herein as alleged in Appellant's complaint were work-related injuries. Immunity for the employer and for co-employees from common law liability for death or injury is therefore appropriate in this case.

In considering the immunity question, the merits of this case require us to examine our traditional "going and coming rule", and the various exceptions, i.e. special circumstances, to the rule that we have previously adopted. Here, Appellant alleged in her complaint that an employee was killed on a public highway while riding in a vehicle driven by another employee who fell asleep at the wheel immediately after both employees left the employer's premises after working a double shift. In ascertaining an answer to this question, the merits of this case require us to further examine our traditional "going and coming" rule, and the various exceptions to the rule that we have previously adopted.

As we recognized in *Brown*, "[u]nder *normal circumstances*, an employee's use of a public highway going to or coming from work is not considered to be in the course of employment. The reasoning underlying this rule is that the employee is being exposed to a risk identical to that of the general public; *the risk is not imposed by the employer*." *Brown*, 212 W.Va. at 126, 569 S.E.2d at 202.(Emphasis added). We further held in the Syllabus of *Buckland v. State Compensation Comm'r*, 115 W.Va. 323, 175 S.E. 785 (1934) that:

> An injury, resulting in death, received by an employee while traveling upon a public highway in the same manner and for like purposes as the general public travels such highway, and not in performance of his duties for his employer, is not an injury received in the course of employment within the meaning of the Workmen's Compensation Act and is, therefore, not compensable.

We observe here, however, that Appellant, in order to attempt to maintain a *respondeat superior* claim, does not plead that this accident occurred under normal circumstances. Rather, Appellant herself asserts special circumstances in order to attempt to make such a claim. We have recognized that various nuances of the "going and coming" rule may serve to alter its application where additional evidence exists linking the employer to the accident. One such exception to the rule is that if employees are required, as a condition of their employment, to routinely journey from place to place, then injuries incurred by those employees while traveling are compensable. We have held that "Workmen's Compensation law generally recognizes that an em-

---

11. As stated above, this Court has previously defined the term "however occurring", as used in this section, to mean "an employee who is injured in the course of and as a result of his employment, and one who, under the common-law principles of master and servant, could have maintained an action against his employer." *Cox v. United States Coal & Coke Co.*, 80 W.Va. 295, 92 S.E. 559, 561 (1917).

ployee is entitled to compensation for an injury received while traveling on behalf of the employer's business." Syl. Pt. 1, *Calloway v. State Workmen's Compensation Comm'r*, 165 W.Va. 432, 268 S.E.2d 132 (1980). However, when an employee engages in a "major deviation from the business purpose", compensation can be denied. *Id.* at Syl. Pt. 3.

■ Another exception to the "going and coming" rule that we have recognized is the "special errand" exception. In *Harris v. State Workmen's Compensation Comm'r*, 158 W.Va. 66, 70–71, 208 S.E.2d 291, 293–94 (1974), we held:

"When an employee, having identifiable time and space limits on his employment, makes an off-premises journey which would normally not be covered under the usual going and coming rule, *the journey may be brought within the course of employment by* the fact that the trouble and time of making the journey, or the special inconvenience, *hazard,* or urgency of making it in the particular circumstances, *is itself sufficiently substantial to be viewed as an integral part of the service itself.*"

*Id.* (*citing* 1 *Larson Workmen's Compensation Law* § 16.10 (1972)).[12] (Emphasis added). *In accord, Courtless v. Jolliffe*, 203 W.Va. 258, 263, 507 S.E.2d 136, 141 (1998). Such a "special errand" may require the use of a highway to perform an employee's duties for the employer. For example, in Syllabus Point 1 of *Canoy v. State Compensation Comm'r*, 113 W.Va. 914, 170 S.E. 184 (1933), we stated:

Injury or death of an employee of a subscriber to the Compensation Fund occurring upon a public highway and not on the premises of the employer, gives right to participate in the fund, when "*the place of injury was brought within the scope of employment by an express or implied requirement of the contract of employ-*

ment, of its use by the servant in going to and returning from work."

*Id.* (Emphasis added). The special errand exception to the "going and coming rule" is still applied by a majority of jurisdictions. *See* Arthur Larson and Lex K. Larson, 1 *Larson's Worker's Compensation Law* § 14.05 (2008).

In evaluating the rather unique nature of the set of claimed circumstances before us, and taking the allegations set forth in the complaint as true, we cannot avoid the fundamental conflict in Appellant's argument. In the case *sub judice*, Appellant's claims, as set forth in her complaint, intertwine the concepts of our traditional "going and coming rule" in the *respondeat superior* context, with those of employer workplace negligence, by alleging that Falls' injuries were the direct and proximate result of the workplace negligence of Union Drilling since Union "negligently and recklessly" required Falls, Roach, and other employees to "consistently work excessive hours without adequate rest or sleep."[13]

Here, Appellant has pled "special circumstances" in the "going and coming rule" context by asserting in her complaint a direct connection between the workplace practices of Union Drilling and the injuries sustained by Mr. Falls. *See Brown*, 212 W.Va. at 125, 569 S.E.2d at 201. Appellant's complaint must be read to maintain that Falls' injuries were directly work-related.

■ In considering whether the journey home, as alleged, was brought within the course of employment, we find in these circumstances that the special hazard or increased risk, i.e. the "special circumstances", involved by working the double shift is itself sufficiently substantial to be viewed as an integral part of the service itself. Mr. Roach's extra shift was at Union's request and it satisfied an important business need.[14] The extra shift required doubling Mr. Roach's normal shift duration. The journey

---

12. Today, this same language can be found in 1 *Larson Workmen's Compensation Law* § 14.05 (2008).

13. We again observe that Appellant's deliberate intent claim remains viable below.

14. Thus, for purposes of satisfying the statutory requirements of West Virginia Code 23–2–6a, we find that Mr. Roach was acting in furtherance of Union Drilling's business.

home was obviously foreseeable and it was an essential part of the special service which Mr. Roach performed after his regular hours. Thus, the alleged negligent conduct of Union Drilling would have indirectly increased the risk of harm to both Mr. Falls and Mr. Roach by causing or contributing to the sleep deprivation of Mr. Roach, the vehicle's driver. Because of the increased risk of harm resulting to both gentlemen as a result of these work-related activities, we find them to fall sufficiently within the course and scope of their employment at the time this accident occurred as "special circumstances" within the context of the "going and coming rule" we set forth in *Brown. Id.*

Other jurisdictions have found an exception to the "going and coming rule" in circumstances such as this, where the trip was made dangerous due to the fact that overtime or irregular hours were required to be worked. *See Safeway Stores, Inc. v. Workers' Compensation Appeal Board, et al,* 104 Cal.App.3d 528, 163 Cal.Rptr. 750 (1980)(holding that doubling of employee's normal shift duration made journey home a foreseeable and essential part of the special service which an employee is called upon to perform after his regular hours); *See also Dawson v. Oklahoma City Casket Co.,* 322 P.2d 642 (Okl.1958)(holding that evidence that employee performed extra work outside his regular hours consisting of unloading coal established that he was performing a special task, and thus, his employment continued until he arrived at his home); *Bickley v. South Carolina Elec. & Gas. Co.,* 259 S.C. 463, 192 S.E.2d 866 (1972)(holding that lineman who was called out by employer to repair electrical lines at a time and in an area other than those that were normal and customary to his employment and who was killed in automobile accident while returning

home after completion was on special errand for employer); *Massey v. Board of Education of Mecklenburg County,* 204 N.C. 193, 167 S.E. 695 (1933).[15] Based upon the foregoing, we conclude that based upon the unique and special circumstances in this case, the journey was brought within the course of employment by the fact that the special hazard or risk resulting from requiring employees to work a double shift was itself sufficiently substantial to be viewed as an integral part of the service itself. The Appellees are therefore entitled to the immunity set forth in W. Va.Code § 23–2–6. *Bias,* 220 W.Va. 190, 640 S.E.2d 540.

■ Regarding Appellant's second assignment of error, Appellant asks this Court to find that the circuit court's decision represents an unconstitutional violation of West Virginia's Certain Remedies Clause, as its decision violated her right to seek redress. The Certain Remedies Clause found in Article III, § 17 of the West Virginia Constitution, says:

[t]he courts of this State shall be open, and every person, for an injury done to him, in his person, property or reputation, shall have remedy by due course of law; and justice shall be administered without sale, denial or delay.

In assessing the merits of this argument, we find Appellant's argument wholly unconvincing and thus summarily dismiss it.[16] Under the laws of West Virginia, a claim seeking workers' compensation benefits could have been filed.[17] Additionally, Appellant's case below, Civil Action No. 06–C–613, remains pending before the circuit court as a deliberate intent case against Appellee Union Drilling. The record also reflects that Appellant is currently pursuing a negligent entrustment theory against Linda Hall, the owner of the vehicle, in order to obtain cover-

---

**15.** In the following additional cases, employees were found to be entitled to benefits where the employer exposed its works to the hazards of travel by requiring the employee to work unusually long hours: *Van Devander v. Heller Elec. Co.,* 405 F.2d 1108, 1110 (D.C.Cir.1968); *Hed v. Brockway Glass Co.,* 309 Minn. 73, 76, 244 N.W.2d 28 (1976); *Snowbarger v. Tri–County Elec. Coop.,* 793 S.W.2d 348, 350 (Mo.1990); *Deland v. Hutchings Psychiatric Ctr.,* 203 A.D.2d 776, 778, 611 N.Y.S.2d 44 (1994).

**16.** Herein, the record reflects that the Appellant has already recovered $100,000.00 under a negligence claim against Donald Roach arising out of his operation of Linda Hall's vehicle.

**17.** Appellant has not been prevented from, but has simply chosen not to, pursue a workers' compensation claim.

age under a homeowner's policy of insurance. Thus, we have no reason to believe that Appellant will be left without any form of redress violating our Certain Remedies Clause.

Lastly, Appellant asserts that the circuit court's decision violates the public policy of this State because extending immunity for injuries which do not "result from" and occur "in the course of" employment shields wrongful conduct from accountability. We dispense with this argument by pointing out that by virtue of the special circumstances herein, we find that the journey was brought within the course of employment by the fact that the special hazard or risk resulting from requiring employees to work a double shift was itself sufficiently substantial to be viewed as an integral part of the service itself. This holding is consistent with our prior jurisprudence, and the jurisprudence of other states.

## IV.

## CONCLUSION

For the reasons set forth herein, we find that the circuit court properly dismissed the Appellant's common law claims against the Appellees, as Appellees were entitled to the immunity set forth in W. Va.Code §§ 23–2–6 and 23–2–6a. Accordingly, the June 21, 2007, order of the Circuit Court of Harrison County is hereby affirmed.

**Affirm.**

Justice STARCHER dissents and reserves the right to file a dissenting opinion.

Justice ALBRIGHT not participating.

Senior Status Justice McHUGH sitting by temporary assignment.

STARCHER, J., dissenting:

(Filed Dec. 30, 2008)

I dissent because the majority opinion is built on shaky, shifting factual sand.

Admittedly, the majority's opinion repeatedly states that its holding is limited to the "special circumstances" created by the case's specific facts—and future courts read-

ing this opinion should keep that in mind. Any slight change in the facts might—and I stress *might*—have lead the Court to a different conclusion.

For example, the majority opinion makes it clear that both the decedent, Daniel Falls, and his supervisor, Donald Roach, had both been compelled by their employer to work excessive hours without adequate rest. The vehicle accident that killed Mr. Falls occurred almost immediately after Mr. Falls and Mr. Roach left their employer's job site. But if the circumstances had been different—for instance, if the accident had happened further from the job site, or had occurred while the workers were traveling *to* work, or if Mr. Roach hadn't been a supervisor, or even if Mr. Falls had been rested and unaware of his supervisor's stupor, then a different result might have been reached by the Court.

Another example of narrow facts in this case rests in the majority opinion's focus on the specificity of the cause of action pled by the plaintiff. The plaintiff's complaint in this case pled that employer Union Drilling was liable under a theory of *respondeat superior* or vicarious liability. But if Union Drilling had been sued under a theory of simple negligence—on the theory that the company carelessly loosed a dangerously instrumentality onto a state highway—then a different result might have been reached by the Court. Certainly, as this Court found in Syllabus Point 1 of *Robertson v. LeMaster*, 171 W.Va. 607, 301 S.E.2d 563 (1983):

One who engages in affirmative conduct, and thereafter realizes or should realize that such conduct has created an unreasonable risk of harm to another, is under a duty to exercise reasonable care to prevent the threatened harm.

The majority opinion criticizes the plaintiff in the instant case for not pursuing a workers' compensation claim. It should be noted, however, that in the past this Court has cruelly said that if a working decedent is young, unmarried and without children—as was Mr. Falls—then his mother is entitled to nothing more from the workers' compensation system than payment of a *portion* of his funeral costs. *See Zelenka v. City of Weir-*

*ton,* 208 W.Va. 243, 539 S.E.2d 750 (2000) (after decedent was crushed on the job by a garbage truck, and decedent's family received $5,000.00 in funeral expenses from workers' compensation, decedent's family could be prohibited from suing municipal employer). So to criticize Mr. Falls's mother for attempting to recover reasonable compensation for his death by way of a lawsuit is to add insult to injury.

I therefore respectfully dissent because future litigants, and trial judges, are left by the majority's opinion guessing whether the litigants are entitled to file a workers' compensation claim, or whether they have a cause of action in the court system. As the majority opinion says, each case will have to be litigated on its peculiar facts.